1
2
3
4
5
6

## IN THE UNITED STATES DISTRICT COURT

7

## FOR THE EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| **MARCELLA JACKSON,** | **1:14-CV-00073-AWI-BAM** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **KAPLAN HIGHER EDUCATION, LLC, a Delaware limited liability company, KAPLAN HIGHER EDUCATION CORPORATION, an unknown business entity, KAPLAN, INC., a Delaware corporation, and DOES 1 through 20, inclusive,** | **Doc. # 27** |
| **Defendants.** | |

9
10
11
12
13
14
15
16
17
18

19       This is an action in diversity for damages arising from the termination of the employment

20   of plaintiff Marcella Jackson ("Plaintiff") by her employer Kaplan Higher Education, LLC, et al.

21   ("Defendant" or "Kaplan Higher Education Corporation" ("KHEC")).  Plaintiff's action was

22   removed to this court from Fresno County Superior Court on January 16, 2014.  Plaintiff's

23   complaint alleges six claims for relief pursuant to California's fair employment practices statute,

24   California Government Code § 12940 et seq., and one claim pursuant to the California Family

25   Rights Act.  Plaintiff's complaint also alleges one claim pursuant to the federal Family Medical

26   Leave Act, 29 U.S.C. § 2615.  Currently before the court is Defendant's motion for summary

27   judgment (Defendant's "Motion").  The parties do not dispute there is complete diversity

28

between the parties and that the amount in question exceeds the statutory amount.  Diversity jurisdiction pursuant to 28 U.S.C. 1332 is therefore uncontested.  Venue is proper in this court.

### GENERAL FACTUAL BACKGROUND AND

The following facts were submitted jointly by the parties and/or are not contested.[1]

Plaintiff began her employment with KHEC as a Career Services Advisor in May 2009. As a Career Services Advisor ("CSA"), Plaintiff's primary job duty consisted of working with students to help them find jobs following graduation.  The immediate supervisor for all CSAs was the Director of Career Services.  Plaintiff worked successfully under her original Director, Connie LoFreso, and under the person who temporarily filled that position when LoFreso became Director of Admissions.  Plaintiff received good performance reviews from 2010 through 2012 and was the top performing CSA in 2012.  About November 2012, Tamara Honohan ("Honohan") was hired to permanently fill the position of Director of Career Services. Honohan therefore became Plaintiff's immediate supervisor as of November 2012.

On January 7, 2013, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") and/or the California Family Rights Act ("CFRA").  Although the Parties' joint undisputed facts and Defendant's Undisputed Material Facts do not directly address the reason for Plaintiff's request for leave, undisputed portions of Plaintiff's proffer of Additional Material Facts indicate that Plaintiff requested leave upon advice of her physician after presenting with symptoms of mental anxiety, emotional stress and related physical symptoms arising from her interactions with Honohan.  Plaintiff's physician initially indicated that Plaintiff's medical leave was to continue through January 20, 2013.  Thereafter, Plaintiff's physician requested a total of four extensions, continuing Plaintiff's medical leave through April 29, 2014.  During the latter part of her medical leave, Plaintiff was in communication with Nancy O'Neal ("O'Neal"),

---

[1]   The facts set forth in this section were either submitted jointly, see Doc. # 27-6, or were submitted as part of Defendant's proffer of Undisputed Material Facts ("UMF's"), Doc. # 27-7 and were not substantially opposed by Plaintiff.

KHEC's Employee Relations Director at the time, and with Andrew Field, who at the time was Director of Finance and Interim Executive Director.

Plaintiff applied for, and began receiving Long Term Disability benefits on or about April 12, 2013.  Plaintiff's physician extended Plaintiff's medical leave through May 19, 2013.  Plaintiff's physician later issued the final extension of medical leave to September 9, 2013.  KHEC terminated Plaintiff's employment on May 2, 2013.  Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") on May 13, 2013, alleging age-based and disability-based discrimination.  Plaintiff's DFEH complaint was denied and a right to sue letter was issued on June 18, 2013.

Plaintiff's complaint alleges a total of eight claims for relief.  Six of the eight claims for relief are alleged pursuant to California Government Code section 12940.  Pertinent to this action, section 12940 prohibits discrimination based on age or physical or mental disability.  Plaintiff's first claim for relief alleges discrimination based on age and the second alleges discrimination based on "a medical condition."  Plaintiff's third and fourth claims for relief are related to the claim for discrimination based on medical disability in that the third claim alleges failure to accommodate the medical disability in violation of section 12940(m) and the failure to timely engage in the "Interactive Process" in good faith, respectively.  Plaintiff's fifth claim for relief alleges that Defendant failed to prevent discrimination against Plaintiff.  Plaintiff's sixth claim for relief alleges Defendant retaliated against Plaintiff's complaints to KHEC administrators over her relationship with Honohan and for filing of the DFEH complaint.  Plaintiff alleges such retaliation is in violation of section 12940(h).  Plaintiff's seventh and eighth claims for relief allege Defendant retaliated against Plaintiff by terminating her employment and not rehiring her following the exercise of rights under California's Family Rights Act and the federal Family Medical Leave Act, 29 U.S.C. § 2615, respectively.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v.</u>

<u>Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710

(9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th

Cir. 1984).

> Under summary judgment practice, the moving party always bears the
> initial responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a genuine
> issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Although the party moving for summary

judgment always has the initial responsibility of informing the court of the basis for its motion,

the nature of the responsibility varies "depending on whether the legal issues are ones on which

the movant or the non-movant would bear the burden of proof at trial."  <u>Cecala v. Newman</u>, 532

F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of

persuasion at trial – usually but not always the defendant – "has both the initial burden of

production and the ultimate burden of persuasion on the motion for summary judgment."  <u>Nissan</u>

<u>Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In

order to carry its burden of production, the moving party must either produce evidence negating

an essential element of the nonmoving party's claim or defense or show that the nonmoving

party does not have enough evidence of an essential element to carry its ultimate burden of

persuasion at trial."  <u>Id.</u>

     If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita</u>

<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l Bank of Arizona v.</u>

<u>Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los Angeles</u>, 607 F.2d 1276,

1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the

opposing party may not rely upon the mere allegations or denials of its pleadings, but is required

to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

material, in support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at

586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).
//

**DISCUSSION**

**I. Medical/Mental and/or Age Discrimination Under FEHA**

In cases involving wrongful termination due to unlawful discrimination, motions for summary judgment are considered under the three-step burden-shifting analysis set forth by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case for discrimination.  See Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 986317, 354 (2000).  Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employee's termination.  Id. at 355-356. If the employer provides a reason, the plaintiff then has a "opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive".  Id.  In the context of this case where the employer is moving for summary judgment and the alleged discrimination is manifest in the employee's termination and non-rehire, the burdens work thus:

> Once the employer makes a sufficient showing of a legitimate reason for discharge, i.e. that it had a lawful, nondiscriminatory reason for the termination, then the discharged employee seeking to avert summary judgment must demonstrate either (by additional facts or legal argument) that the defendant's showing was in fact insufficient or (by competent evidentiary materials) that there was a triable issue of material fact to the defendant's showing.  With respect to the latter choice, the employee must produce substantial responsive evidence that the employer's showing was untrue or pretextual.  For this purpose, speculation cannot be regarded as substantial responsive evidence.

Hanson v. Lucky Stores, Inc., 74 Cal.App.4th 215, 225 (2nd Dist. 1999) (internal quotations and citations omitted).

**A. Disability Discrimination**

"FEHA makes it an unlawful employment practice to discriminate against any person because of a physical or mental disability."  Faust v. California Cement Co. 150 Cal.App.4th 864, 886 (2008).  A plaintiff in an action for violation of FEHA has the burden to first establish a prima facie case of discrimination by showing she was (1) a member of a protected class, (2) that she was qualified for the position she held, (3) that she suffered an adverse employment action, and (4) that some circumstance suggests a discriminatory motive.  Guz, 24 Cal.4th at 354.

However, in a motion for summary it is the employer who bears the initial burden to show "either that (1) the plaintiff could not establish one of the [prima facie] elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for the decision . . . ." <u>Lawler v. Montblanc N.A., LLC.</u>, 704 F.3d 1235, 1242 (9th Cir. 2013).

　　　Perhaps because Plaintiff was granted disability leave and was granted a number of extensions of medical leave, Defendant's primary argument in seeking to demonstrate that Plaintiff cannot establish a prima facie case of discrimination based on disability centers on the contention that Plaintiff was terminated for the legitimate reason that she was unable to articulate a firm return to work date despite a number of inquiries and a number of extensions of medical leave. The Parties thus leave unexamined the question of whether Plaintiff has demonstrated that she had a "mental or physical disability" in the first instance as that term is defined by the FEHA. Unfortunately, the court feels it cannot leave this issue unexamined because the fact of a disability analytically precedes all other questions and the court feels it would be irresponsible to issue an opinion on other grounds thereby possibly conveying the false impression the court found that Plaintiff had made an adequate showing she was a member if a protected class because she suffered a "disability."

　　　The text of FEHA offers a non-exhaustive list of what is intended to be included within the scope of "mental disability" within the scope of the FEHA as follows:

> (1) Having any mental or psychological disorder or condition, such as mental retardation, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity.
>
> (2) Any other mental or psychological disorder or condition not described in paragraph (1) that requires special education or related services.
>
> (3) Having a record or history of a mental or psychological disorder or condition not described in paragraph (1) or (2), which is known to the employer or other entity covered by this part.
>
> (4) Being regarded or treated by the employer or other entity covered in this part as having, or having had, any mental condition that makes achievement of a major life activity difficult.
>
> (5) Being regarded or treated by the employer or other entity covered by this part as having, or having had, a mental or psychological disorder or condition that no present disabling effect, but that may become a mental

1    disability as described in paragraph (1) or(2).

2    Cal. Gov't Code § 1292(i).

3         At the core of the concept of mental or physical disability under FEHA is the

4    requirement that there must be some "limitation" that makes the "achievement of a major life

5    activity difficult."  See Diaz v. Federal Express Corp., 373 F.Supp.2d 1034, 1046-1047 (C.D.

6    Cal. 2005) (discussing broader scope of disability under FEHA).[2]  ,  In addition, the court notes

7    that, although case authority does not directly so state, the court finds that in each case where

8    there is determined to be a "disability," at least some aspect of the alleged disability preexisted

9    the manifestation of the results of the alleged disability on the plaintiff's performance in the

10   workplace.  Stated another way, there is no case authority known to this court where a district

11   court has ruled that a plaintiff has successfully alleged a disability where there was not some

12   articulable condition or problem that preexisted the employer's conduct giving rise to the

13   employee's allegation of discrimination in violation of FEHA.

14        The facts submitted and undisputed by the Parties give no hint of any condition suffered

15   by Plaintiff that preexisted the arrival of Honohan as Plaintiff's supervisor.  Both Plaintiff and

16   Defendant are clear that Plaintiff's symptoms of anxiety, stress and the like were a response to

17   Honohan's management style.  Neither Party explains Plaintiff's reaction to Honohan's

18   management style as being the manifestation of some particular characteristic of Plaintiff that

19   was known or could have been known prior to Honohan's arrival.  Thus, the "disability" Plaintiff

20   alleges was, in fact, her personal reaction to Honohan's management style.  The anxiety,

21   depression and feelings of despair that led Plaintiff to take medical leave were symptoms of

22   Plaintiff's disability but were not the disability itself.

23        The notion that an individual's personal reaction to a supervisor's management style may

24   constitute a "disability" in the absence of any articulable and knowable preexisting sensitivity to

25   that style is intuitively problematic.  The result would be the transmutation of a legislative act

26   _____

27   [2]    This requirement brings a greater number of conditions within the meaning of "disability" under
     FEHA than would be the case with the federal Americans with Disabilities Act, which requires that the
28   condition in question present a "substantial limitation."  Id.

1
2
3
4
5
6
7
8
9
10

whose purpose was to prevent discrimination into a cause of action for anyone whose individual sensibilities result in significant stress when they are treated in a manner that disagreeable to them but is otherwise lawful.  This court's preliminary review of case authority from District courts of this circuit indicates that courts in this circuit have uniformly disallowed claims of disability discrimination where the "disability" claimed was the inability to get along with the worker's supervisor.  See Alsup v. U.S. Bankcorp., 2015 WL 224748 (E.D. Cal. 2015) at *4 (collecting District and California appellate court cases holding that inability to get along with a supervisor does not give rise to a disability within the meaning of either FEHA or ADA). Indeed, as has been noted by this court:

11
12
13
14
15
16
17
18
19
20

> [A]n inability to get along with one's supervisor does not give rise to a disability within the meaning of either the FEHA or the ADA. See Hobson v. Raychem Corp., 73 Cal.App.4th 614, 628 (1999), *overruled* on other grounds by Colmenares v. Braemar Country Club, Inc., 29 Cal.4th 1019, 1031, (2003) ("The federal courts interpreting the ADA as well as all California courts which have interpreted the FEHA, have uniformly declined to extend protection to persons whose alleged disabilities rendered them unable to perform a particular job even though they might have been physically able to work in a different position ... [citations omitted] ... In other words, the inability to perform one particular job, or to work under a particular supervisor, does not constitute a qualified disability." [citations omitted]); see also Swehla v. Teachers' Ret. Bd., 192 Cal.App.3d 1088, 1091 (1987) (holding that teacher who claimed to suffer from passive aggressive disorder, among other problems with anxiety and motivation, was not disabled within the meaning of the California Education Code § 22122); Palmer v. Circuit Court of Cook County, Ill., 117 F.3d 351, 352 (7th Cir.1997) ("A personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, [citation], even if it produces anxiety and depression, as such conflicts often do.")

21

Gliha v. Butte-Glenn Comm. College Dist., 2013 WL 3013660 (E.D. Cal. 2013) at *5.

22
23
24
25
26
27
28

The court finds Plaintiff has failed to allege, much less produce, facts or evidence from which a finder of fact could determine that Plaintiff was mentally or physically disabled within the meaning of FEHA at any time relevant to this action.  The court is aware that neither Party has briefed this issue.  The court will therefore provide an opportunity for input by the parties prior to finalizing its decision to grant summary judgment to Defendant on Plaintiff's claim for unlawful discrimination on the basis or physical or mental disability under FEHA.

### B.  Age Discrimination

A plaintiff can establish a prima facie case for age discrimination by demonstrating that she was: (1) a member of the protected class [ages 40-70]; (2) performing her job satisfactorily; (3) was discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications. Nidds v. Schindler Elevator Co., 113 F.3d 912, 917 (9th Cir. 1997).  The last of these elements is sometimes expressed as requiring that the complainant show "some other circumstance suggest[ing] discriminatory motive." Guz, 24 Cal. 4th at 355.  "The general requirement is that the employee offer circumstantial evidence such that a reasonable inference of age discrimination arises.  The requirement is not an onerous one." Hersant v. Dep't of Social Servs., 57 Cal.App.4th 997, 1002-1003 (4th Dist. 1997).

There is no question that Plaintiff was within the age range protected by FEHA at all times relevant to this action.  It is also not contested that, prior to going on medical leave, Plaintiff performed her job satisfactorily or better.  There is also no question that Plaintiff was terminated from her position and was not rehired when she was cleared to come off long term disability leave.  What is disputed by the parties is whether any facts give rise to an inference of age bias and, of so, whether Defendant has offered a legitimate reason for the termination which is not rebutted by Plaintiff.

Defendant contends Plaintiff has not and cannot allege or produce evidence that would give rise to an inference of age discrimination.  Plaintiff alleges in her Additional Facts that Honohan "made comments about [Plaintiff's] age and need to retire." See Doc. # 33 at ¶ 112.  There is some dispute over whether the evidence cited by Plaintiff to establish this fact is competent to establish the fact alleged.  Also, of some significance, it is undisputed that Honohan treated Plaintiff dismissively and in an unfriendly manner and questioned Plaintiff's capability to handle the additional requirements Honohan was trying to impose on the CSAs

generally.  It is undisputed that Plaintiff complained regarding Honohan's age-related comments to Field through O'Neal, but it is also not disputed that essentially all of the CSAs working for Honohan had difficulty with Honohan's management style and that Plaintiff was not the only CSA to complain to upper management on that topic.  It is not clear from the alleged facts or proffered evidence how frequently comments about retirement were made or how closely those comments were connected with Honohan's other comments calling Plaintiff's competence into question.

The evidence relied upon by Plaintiff to establish the fact that Honohan mentioned retirement to Plaintiff in the context of calling Plaintiff's competency into question is the deposition record of Roni Curtis-Valle, Exhibit "I" to the Declaration of Whitten, Doc. # 29. The portions of the Curtis-Valle Declaration cited by Plaintiff establish[3] that Honohan had "periodically" mentioned retirement to Plaintiff, who initially thought the comments were "a joke," but eventually came to understand the comments as part of Honohan's continuing challenge to Plaintiff's competence to undertake the changes required.  Undermining somewhat Plaintiff's contention that Honohan's remarks give rise to an inference of age-bias is the fact that when asked for her opinion as to why Honohan was ignoring Plaintiff, Curtis-Valle testified that had no idea why.  See Curtis-Valle Dec. at 12:13-17.

The evidence offered by Plaintiff to show that Honohan made periodic remarks concerning Plaintiff's retirement constitutes weak evidence of age-related bias on Honohan's part, given the absence of any other comments by Honohan regarding age.  However, even if the

---

[3]     Defendant objects to the cited portions of the Curtis-Valle Declaration on the ground of hearsay and because the declarant was not in a position to know Honohan's motives or intentions.  The court overrules Defendant's objection insofar as it constitutes evidence that Honohan did, at least on some occasions, bring up the topic of Plaintiff's age in the context of her ability to adapt to the changes Honohan was trying to implemented.

court accepts that evidence that Honohan made remarks regarding the possibility of Plaintiff's retirement and made those comments in conjunction while expressing doubts about Plaintiff's ability to adapt, that evidence is insufficient to support the inference that *the adverse employment action* Plaintiff suffered was the result of age-based discrimination.  Plaintiff's complaint is clear that the adverse employment action complained of is Plaintiff's termination by Defendant and the failure of Defendant to rehire her following medical clearance to return to work.  The transcript of the declaration of Andrew Field, included as Exhibit "J" to the Declaration of Whitten, Doc. # 29, show that the decision to terminate Plaintiff was made by Field "in consultation with O'Neal and Honohan."  In his deposition testimony, Field very explicitly states that Plaintiff's performance on the job was not a factor in her termination.  See Field Dec. at 37:9-38:4.  What is significant about this portion of Field's testimony is that immediately after testifying that Plaintiff's performance evaluations had always been "good" or "positive," Field was asked if he was aware of any complaints Plaintiff had made "about anything."  Field Dec. at 38:5-10.  Field acknowledged that he was aware that Plaintiff had made complaints about Honohan's "leadership skills."  Field Dec. at 38:13-16.  It is obvious from the context that if Field had been made aware that Plaintiff had complained specifically about Honohan's comment's concerning retirement, that fact would have been elicited at that point in the testimony.  As it is, the evidence provided by Plaintiff gives no hint that either Field or O'Neal had knowledge that Plaintiff had complained specifically about Honohan's comments regarding retirement at any time during their dealings with Plaintiff.  It is not disputed that the actual authority to terminate Plaintiff's employment rested with Field, not Honohan.

Defendant has challenged Plaintiff's ability to produce any evidence to show that age-related bias had any connection to the adverse employment action Plaintiff experienced.  At this point in the proceedings, Plaintiff is burdened to show at least some evidence that could give rise

to the inference that impermissible considerations of age played a role in Plaintiff's termination or her non-rehire.  Plaintiff has failed to make any showing of the kind.  To the extent there is any evidence that Honohan may have harbored some form of age-related bias, there is absolutely no evidence that such bias entered in any way into the decision to terminate or not rehire.  The declaration testimony provided by Plaintiff fails to show the actual reason behind Plaintiff's termination or non-rehire is anything other than what Field and O'Neil testified – that Plaintiff was terminated because she went on long term disability and could not provide a date certain for her return and that she was not rehired because there were no open positions at the time she was medically cleared to return to work.  Any other interpretation of the testimony given by Defendants would require pure speculation as there is no logical or fact-based connection between the few instances of Honohan's mention of retirement and Plaintiff's termination and non-rehire.  The court concludes that Plaintiff has failed to carry the burden of producing evidence sufficient to give rise to the inference that improper age-based bias played any part in the adverse employment action suffered by Plaintiff.  Defendant is therefore entitled to summary judgment as to Plaintiff's first claim for relief.

## II.  Claims Three, Four and Five – Failure to Accommodate, to Timely Engage in Interactive Process and to Prevent Discrimination

Subsection 12940(m) of the California Government Code provides that it shall be unlawful "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.  Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation."  Id.  As an initial matter, the plain language of this statute only imposes an obligation of accommodation where the employee has a *known mental*

*or physical disability*.  As the court has provisionally determined, Plaintiff has failed to adduce any evidence that she had a known (or unknown) disability within the meaning of this chapter. Defendant therefore cannot be held liable for failure to provide reasonable accommodation.

Even if Plaintiff's symptoms could be classified as a medical disability within the meaning of FEHA, the only accommodation that Plaintiff requested or indicated she could accept (other than disability leave) was to work under someone other than Honohan.  It has been the opinion of this and other courts in this circuit that placement with a different supervisor, or its equivalent, is presumed to be an unreasonable job accommodation request.  See Alsup, 2015 WL 224748 (E.D. Cal. 2015) at *6 (reviewing California and federal cases so holding).

The court provisionally concludes that Plaintiff's third claim for relief for failure to accommodate fails because Plaintiff has failed to provide evidence that she was disabled within the meaning of FEHA.  As a consequence, Plaintiff cannot state a claim for relief for failure to timely institute the interactive process because she has failed to provide evidence that the interactive process was required.  Finally, Plaintiff's claim for failure to prevent discrimination provisionally fails because Plaintiff has failed to show that any discrimination occurred. Defendant is therefore provisionally entitled to summary judgment as to Plaintiff's third, fourth and fifth claims for relief.

**III.  Plaintiff's Sixth, Seventh and Eighth Claims for Relief – Retaliation**

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.  [Citations]."  Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1208, 1042 (2005).  Because there must be a demonstrable link between the adverse action and the protected activity, an analysis of any claim for retaliation demands absolute clarity as to the alleged acts

that fit in both categories.  In the instant action, some discussion is required to achieve that clarity.

Generally, Plaintiff alleges there were two "protected activities" that Defendant retaliated against.  With regard to Plaintiff's sixth claim for relief, the alleged protected activity that was retaliated against was her voicing of complaints concerning Honohan to administrative personnel and then filing a complaint for discrimination against Defendant with the California Department of Fair Employment and Housing ("DFEH") on or about May 13, 2013.[4]  With regard to Plaintiff's seventh and eighth claims for relief, Plaintiff alleges the "protected activity" was the taking of medical leave as authorized by the California Family Rights Act ("CFRA") and the federal Family Medical Leave Act ("FMLA"), respectively.  Defendant's motion for summary judgment challenges Plaintiff's claims for retaliation by contending that Plaintiff cannot show a prima facie case for retaliation with regard to any of her claims because Defendant has shown that it had a legitimate reason for the claimed retaliatory acts – the termination of Plaintiff's employment and Plaintiff's non-rehire – and that Plaintiff has not and cannot allege facts to show that there remains an issue of material fact as to the legitimate reasons for Defendant's actions.  The court will consider Defendant's contentions in order.

### A.  Plaintiff's Employment Termination

Defendant's basic contention with regard to all of Plaintiff's claims is that Defendant had a legitimate reason for terminating Plaintiff's employment; that she had received 12 weeks of CFRA/FMLA protected leave plus approximately an additional four weeks of long term leave and she remained unable during any of that time to provide Defendant with a firm, anticipated

---

[4]    Plaintiff filed a second complaint with the DFEH alleging retaliation after she was not rehired.  Since the second complaint *followed* the last of the alleged adverse actions by Defendant, it cannot be the basis of any retaliation claim.

return-to-work date.  Plaintiff admits that her FMLA/CFRA protected short term leave began on

January 6, 2013, and ended on April 12, 2013, at which time her leave category was changed to

long-term disability.  Defendant alleges, and Plaintiff does not dispute, that Plaintiff did not

provide a firm return-to-work date despite being asked to do so just prior to the April 12 date of

exhaustion of protected leave.  The deposition testimony of Field and O'Neal clearly indicates

that Defendant's stated reason for Plaintiff's termination was that she could not provide a firm

date for her return to work and Defendant needed someone to fill then-vacant CSA positions.

In seeking to overcome Defendant's showing of a legitimate reason for termination,

Plaintiff asserts both legal and factual bases.  Defendant's proffer of undisputed material facts

("UMF's") pertaining to Plaintiff's medical leave, including Defendant's inquiries regarding

return-to-work and the facts behind the various extensions of medical leave together with

Plaintiff's objections to the proffered UMF's and Defendant's replies, are set forth at paragraphs

5 through 23 of Document # 32.  Of significance, Defendant (through O'Neal), expressed an

interest in knowing Plaintiff's expected return-to-work date in late April 2013, during a

conversation between O'Neal and Plaintiff.  Plaintiff does not dispute that she was asked about a

firm return-to-work date; rather she objects to Defendant's proffered UMF's by stating that

"[s]hortly before her termination, [Plaintiff] spoke to O'Neal and told [O'Neal] she was working

on coming back to work.  [Citation.]  [Plaintiff] never told O'Neal that she had an *indefinite*

return to work date and O'Neal did not tell [Plaintiff] she was going to be terminated unless she

gave them a date.  [Citations.]"  Doc & 32 at ¶ 14 (italics added).

While there may be room to quibble over wording, the court finds that the proffer of

UMF's is sufficient to establish the unrebutted fact that in late April 2013, after Plaintiff's

FMLA/CFRA leave had been exhausted, Defendant asked Plaintiff if she could provide a firm

return-to-work date and Plaintiff did not provide any firm date.  It is not significant that Plaintiff

-16-

did not affirmatively say that there was no definite return date since, even in the context of

accommodation required by statute, an employer is not required "to wait indefinitely for an

employee's medical condition to be corrected." <u>Gantt v. Wilson Sporting Goods Co.</u>, 143 F.3d

1042, 1047 (6th Cir. 1998).  Defendant points out that, even after Plaintiff's termination, her

physician extended her medical leave through September 9, 2013, and that Plaintiff remained

unable to provide a firm return-to-work date.  Plaintiff objects to Defendant's proffered UMF's

by stating  she "testified [during discovery] that she did not think [the doctor's final extension of

medical leave] was accurate because she was feeling better and ready to come back to work.

There is evidence from which a reasonable jury could find that Plaintiff would have been able to

return for work but for the additional mental trauma caused by her termination."  Doc. # 32 at ¶

23.  As Defendant points out, Plaintiff's objection is irrelevant because Plaintiff has not provided

any evidence that Defendant was aware of Plaintiff's disagreement with her physician's order at

the time.

        The court finds that, despite Plaintiff's objections, Defendant has successfully established

that through a pattern of extensions of medical leave well past the 12 week period protected

under FMLA or CFRA, Plaintiff failed to adduce any evidence showing that she communicated

to Defendant a return-to-work date with any amount of certainty attached to it.

        At paragraphs 24 through 28 of Document 32, Defendant proffers UMF's to establish

that Defendant needed to fill the CSA position occupied by Plaintiff.  As above, the proffered

UMF's are set forth along with Plaintiff's objections and Defendant's reply.  In particular, UMF

# 24 states that as of April 2013 the Career Services Department was understaffed because only

2 CSAs remained on the job.  UMF # 25 states that as a result of understaffing the department

was not meeting corporate targets.  Plaintiff objects to these UMFs on grounds of lack

foundation and are hearsay.  Defendant cites the Field Declaration, doc. # 28 at ¶ 4, as the source

of both facts.  Since Field was serving as Director of Finance, Interim Director of Education and Interim Executive Director of the campus at the time, he was in a position to testify directly as to the facts stated and the declaration states that the statements were made from first-hand knowledge.  There is therefore no foundational basis for objection.  Further, Plaintiff does not identify how or why the facts are hearsay inasmuch as there is no indication the proffered fact was the result of any out of court statement.  Plaintiff's objections are therefore overruled. Plaintiff presents no facts to contradict Defendant's general allegation that Plaintiff's unoccupied position needed to be filled because there were an insufficient number of working CSA's to meet the needs of the university.  The court finds that Plaintiff has not alleged facts sufficient to create an issue of material fact as to whether Defendant terminated Plaintiff's employment in order to be able to fill her position as a CSA.

Plaintiff's assertions of legal bases for opposition to summary judgment on her claim for relief for retaliatory job termination are somewhat unclear.  In her opposition to Defendant's motions for summary judgment as to Plaintiff's discrimination and retaliation claims, Plaintiff cites Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000) for the proposition that where a party opposing summary judgment shows that the employer's proffer of a legitimate reason for termination are unworthy of credence, a showing of a prima facie case of discrimination or retaliation alone may be sufficient to warrant trial.  Plaintiff is correct insofar as Reeves does hold that where an employee is able to produce *evidence* to show that the explanation for termination put forward by the employer is unworthy of credence, that fact may be very probative of the employer's true reason for termination.  See id. at 147 (proof that the "defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination and may be quite persuasive.")

While Plaintiff correctly states the holding in Reeves, there is no factual basis to support

the application of that holding to the case at bar.  In <u>Reeves</u>, the employer stated that the reason for the employee's termination was that the employee was guilty of shoddy record-keeping.  The plaintiff in <u>Reeves</u> countered by offering proof that the records he kept were, in fact, accurate and appropriate.  The type of evidence in <u>Reeves</u> that directly and factually contradicts the employer's proffered reason for termination is absent in this case.  Plaintiff merely argues with regard to the sixth claim for relief that Plaintiff "had the audacity to complain about one of [Defendant's] administrators" and from this fact speculates that a jury could find that Defendant is "just making all of this up to get rid of [the complaining] employee."  Doc. # 29 at 17:10-13.

As noted above, speculation will not suffice to create an issue of material fact.  There is a big difference between providing hard evidence that the reason given by the employer was factually false and merely speculating that a jury armed only with the fact that the employee had complained about an administrator and was over 40 years old *could* find that the reason given by the employer was pretextual.  The first situation brings a plaintiff within the holding of <u>Reeves</u> and the second does not.  The court finds that Plaintiff may not rely on the holding in <u>Reeves</u> because she has not made an affirmative showing of any evidence to show that Defendant's reason for her termination was pretextual.

A second case mentioned by Plaintiff in the context of the claims for discrimination is <u>DFEH v. Lucent Technologies, Inc.</u>, 642 F.3d 728 (2011), which Plaintiff cites for the proposition that an employer offering a "legitimate" reason for the employee's termination "'must show that the procedure by which [she] was terminated was validly and fairly devised and administered to serve a legitimate business purpose.'"  <u>Id.</u> at 745-746 (quoting <u>Hanson v. Lucky Stores, Inc.</u>, 74 Cal.App.4th 215, 224 (2nd Dist. 1999).  Plaintiff alleges that it is Defendant's policy "to terminate employees as soon as they apply for long term disability benefits – irrespective of what CFRA and the FEHA say about the need to engage employees in

the interactive process and offer additional leave as a reasonable accommodation if it is not an undue burden." Doc. # 32 at 19:11-14.

There are a number of problems with Plaintiff's contention. First, the allegation that it is the policy of KHEC to terminate every employee that applies for long term disability benefits undercuts her contention that she suffered disparate treatment. Second, it is not clear what purpose Plaintiff has in citing Hanson. Is Plaintiff contending that the quote from Hanson establishes a burden on employers that is in addition to the requirement that they demonstrate the termination of the employee was "legitimate"? If so, the court can find nothing in Hanson to support that contention. Arguably, an employee could rely on the holding in Hanson for the *defensive* proposition that a particular stated purpose for the termination of an employee's employment had no business purpose and was therefore illegitimate, but Plaintiff does not actually make any argument to that effect.

In any event, Hanson is factually distinguishable from the case at bar. In Hanson, the issue the court was dealing with was whether an employer had satisfied its duty under FEHA to accommodate the disability of an employee where there was no dispute that the employee was disabled on the job and was covered by a collective bargaining agreement. The primary distinguishing characteristic of this case *vis a vis* Hanson is that this court has determined that Plaintiff was not disabled within the meaning of the FEHA or ADA and that, as a consequence, the accommodation she did or did not receive from Defendant is not governed by, or actionable under, either of those statutes. To the extent the issue is important, the court finds that Defendant's statement that they declined to keep Plaintiff's position open and terminated her employment so that they could hire a needed replacement to do Plaintiff's job sufficiently states a reason for the termination with "a legitimate business purpose."

The court finds that Defendant has adequately demonstrated a legitimate,

nondiscriminatory reason for the termination of Plaintiff's employment and that Plaintiff has

failed to produce any evidence that would support a finding that there remains an issue of

material fact as to the legitimacy of Defendant's termination of Plaintiff.  The court concludes

that Defendant is entitled to summary judgment as to any claim for retaliation based on the

termination of Plaintiff's employment.

### B. Defendant's Failure to Rehire

In a manner similar to the above, Defendant seeks summary judgment as to Plaintiff's

claims that Defendant retaliated by not rehiring Plaintiff by showing that Plaintiff had a

legitimate reason for hiring other candidates to the open positions prior to the time Plaintiff was

available for employment.  While the court does not disagree with Defendant's contention that

that they had a legitimate, nondiscriminatory reason to fill the open positions when they did and

that there were no open positions when Plaintiff was available for hire, the court finds that

Plaintiff's retaliation claims based on failure to rehire are subject to summary judgment for a

more basic reason; Plaintiff has not shown that she was subjected to an "adverse employment

action" within the meaning of FEHA.  As above, the court feels this issue analytically precedes

the question of whether there is a connection between the protected activity and the adverse

action and that the issue should not be overlooked.

The statutory language that makes retaliation an unlawful employment practice is found

at Cal. Gov. Code § 12940(h), which provides that it is unlawful for an employer "to discharge,

expel, or otherwise discriminate against any person because the person has opposed any

practices forbidden under this part or because the person has filed a complaint . . . ."  Generally,

this court has held that "adverse employment action" encompasses a wide range of actions by an

employer that may materially disadvantage an *employee*.  See Sanchez v. California, --- F.3d ---,

2015 WL 859793 (E.D.Cal. 2015) at *13 ("The Ninth Circuit has taken an expansive view on

what constitutes adverse employment action").  "[T]he protection afforded by Title VII's anti-retaliation provision extends beyond workplace or employment related acts and harm. [Citation.] This does not extend to all retaliation, but that which is materially adverse to a reasonable *employee*."  Id. (italics add) (citing Burlington Northern and Santa Fe Ry. Co. v. White (Burlington), 548 U.S. 53, 67 (2006)).

It must be remembered that at the time Plaintiff applied for rehire she had been on long term medical leave that was not protected under FMLA or CFRA.  It is also important to recall the court has provisionally held that at the time of the termination of her employment, Plaintiff was not disabled and therefore not *entitled* to accommodation under FEHA, whether or not she qualified for protected medical leave under CFRA or FMLA, or whether Defendant had extended other accommodation.  Thus, from a statutory point of view, Plaintiff has failed to allege or show that her status was any different than any other job applicant at the time she applied for her old job.

Both the text of the statute prohibiting retaliation and the policy logic behind that prohibition indicate that an act of "retaliation" is an act taken against an *employee*, not an ex-employee or non-employee.  Plaintiff bears the ultimate burden of producing facts or law to satisfy the elements for a prima facie case for retaliation.  It is not the court's or Defendant's burden to show that not being hired is an adverse job action within the meaning of FEHA.  The court's review of authority is not exhaustive, but is sufficient to show that the court should not *presume* that a former employee who has no demonstrated statutory right to being hired or rehired suffers an adverse job action simply because she is not hired or rehired.  For this reason, the court finds that Plaintiff has not satisfied the first part of the burden-shifting test by showing a prima facie claim for retaliation and that Defendant is therefore entitled to summary judgment on any claim of retaliation based on Defendant's failure to rehire.

1    Again, the court agrees that Defendant has articulated an adequate reason that Plaintiff

2   was not rehired – there were no job openings at the time she was medically cleared for work –

3   and that Plaintiff has not offered any facts in rebuttal.  However, the court feels it should make it

4   clear that its determination that Defendant is entitled to summary judgment on Plaintiff's claim

5   for retaliation on the basis of Defendant's failure to rehire is based on the court's determination

6   that Plaintiff has failed to show that a failure to hire or rehire can be an act constituting an

7   adverse employee action.

8

9

10    THEREFORE, for the reasons discussed above, it is hereby ordered that:

11       1.  Defendant's motion for summary judgment as to Plaintiff's first, sixth, seventh

12           and eighth claims for relief is hereby GRANTED.

13       2.  Plaintiff is hereby ORDERED to SHOW CAUSE why summary judgment should

14           not be granted as to Plaintiff's second, third, fourth and fifth claims for relief on

15           the ground that Plaintiff has failed to show that she was "disabled" within the

16           meaning of FEHA.  Plaintiff's response to this order to show cause shall be filed

17           and served not later than twenty-one (21) days from the date of service of this

18           order.  If Plaintiff does not respond to this order to show cause within the time

19           period indicated, Defendant shall so notify the court and judgment will be granted

20           as to Plaintiff's claims two, three, four and five.

21

22

23

24   IT IS SO ORDERED.

25   Dated:   May 5, 2015 _____       _____

26                                SENIOR  DISTRICT  JUDGE

27

28

-23-