IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLA JACKSON,<br><br>**Plaintiff,**<br><br>vs.<br><br>KAPLAN HIGHER EDUCATION, LLC, a Delaware limited liability company, KAPLAN HIGHER EDUCATION CORPORATION, an unknown business entity, KAPLAN, INC., a Delaware corporation, and DOES 1 through 20, inclusive,<br><br>**Defendants.** | 1:14-CV-00073-AWI-BAM<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOLLOWING RESPONSES TO COURT'S ORDER TO SHOW CAUSE**<br><br>Doc. #'s 27 & 35 |

On May 5, 2015, the court issued a Memorandum Opinion and Order on the motion of defendants Kaplan Higher Education, LLC. ("Defendants") for summary judgment (hereinafter the May 5 Order"). Doc. # 35. The May 5 Order granted Defendants' Motion for summary judgment as to plaintiff Marcella Jackson's ("Plaintiff's") first claim for relief for age based discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), her sixth claim for relief for retaliation for the filing of a complaint under FEHA and her seventh and eighth claims for relief for retaliation under the California Family Rights Act and the federal Family Medical Leave Act, respectively. Plaintiff's remaining claims for relief – the second, third, fourth and fifth claims – were alleged for violation of various aspects of FEHA and the May 5 order directed the parties to show cause why summary judgment should not be granted as to these claims based on Plaintiff's failure to show she suffered from a "disability" within the meaning of FEHA. The parties have responded to the court's May 5 Order. For the reasons that

follow, the court will find that Defendants are entitled to summary judgment as to the remainder of Plaintiff's claims.

**I. Plaintiff's Response to the Order to Show Cause**

There is no dispute that Plaintiff's job performance was satisfactory or better from the time of her employment until Tamara Honohan ("Honohan") became her supervisor in November 2012. It is also not disputed that Plaintiff requested medical leave under the California Family Medical Leave Act ("FMLA") beginning on January 7, 2013, and that she displayed symptoms of depression and anxiety which she attributed in substantial part to the problematic nature of her interactions with Honohan. The court's May 5 Order expressed the court's legal doubt that the inability of an employee to function under the supervision of a *particular* supervisor because of symptoms that gave no hint of existence prior to the employee's encounter with the particular supervisor cannot be the basis for disability claims under California's Fair Housing and Employment Act ("FEHA"). Plaintiff's response to the court's May 5 Order consists substantially of evidence to show that Plaintiff did, in fact, have an articulable psychiatric condition that preexisted her encounter with Honohan, but that the condition remained occult until it was triggered by her interaction with Honohan in November of 2012.

There are a number of exhibits attached to Plaintiff's response to the court's May 5 Order. These exhibits fall into two groups. The first group consists of several exhibits documenting Plaintiff's encounters with mental and medical healthcare providers and demonstrates the continuation of Plaintiff's symptoms of stress, anxiety and depression, and the continuation of her status on medical leave under FMLA. The second group consists of a single exhibit, Exhibit "U" to Doc. # 36-1, which present opinions by Forensic Neuropsychiatry Group, Inc. of Plaintiff's mental health status based on a review of Plaintiff's Complaint, the records of Community Medical Centers, records of Fresno County Department of Behavioral Health, records of Anderson Medical Associates and records of Kaiser Permanente, Fresno. Doc. # 36-1 at 24-25. Exhibit "U" expresses the psychiatric opinion of Dr. James E. Rosenberg, M.D. and

will be referred to hereinafter as the "Rosenberg Report." It should be noted that the Rosenberg Report is retrospective in that it relies on written material from encounters that occurred prior to 2014, and that the author, Dr. Rosenberg, never examined Plaintiff directly. It should also be noted that the Rosenberg Report is dated January 20, 2015.

Pertinent to this discussion, the Rosenberg Report expresses a total of three "Opinions;" each supported by a number of observations based on the afore-mentioned sets of documents. The first of these opinions, which is the most germane to Plaintiff's argument, is that notwithstanding the apparent concern of Plaintiff with Honohan's management style, "[t]here is no significant evidence from a psychiatric standpoint that [Plaintiff] experienced an emotional injury or psychiatric disorder while working for Kaplan as a result of the allegations in this matter." Doc. # 36-1 at 25. Among the observations supporting this opinion is the following:

> However, despite the various Kaiser chart entries, as above, that document [Plaintiff's] subjective complaints about her work experiences at Kaplan, the available sources of information instead clearly indicate that her primary diagnosis has been the Borderline Personality Disorder with chronic preexisting impairments in major-live functions, unresolved major developmental life traumas, other significant unresolved preexisting emotional issues, unstable mood, unstable self-esteem, unstable relationships with paranoid thinking about how other people treat her, eating disorder symptoms, and other emotional difficulties unrelated to defendants.
>
> The available sources of information demonstrate that [Plaintiff's] anxiety, depressive and other emotional problems were chronic and preexisting, that her subjective work claims were in fact by-products of her Borderline Personality Disorder in which she misinterpreted appropriate work situations as personal attacks on her, and that, even if her subjective work-related allegations were accepted at face value to be true, they would not collectively constituted a substantial factor in the onset or course of her chronic emotional problems.

Doc. # 36-1 at 26.

The second "Opinion" set forth in the Rosenberg Report is that "[t]here is no significant evidence from a psychiatric standpoint that [P]laintiff experienced an emotional injury or psychiatric disorder as a result of her *termination* from Kaplan." Doc. # 36-1 at 29 (italics added). The court notes that this Opinion is to a significant extent based on the same

observations as the first Opinion and is consistent with it in the sense that it attributes any emotional difficulty Plaintiff may have had when her employment was terminated to a pre-existing mental disorder – Borderline Personality Disorder – and not to the termination itself. The court notes that this Opinion undercuts Plaintiff's prior allegation that, but for her termination and the emotional trauma caused by it, she believed that she was ready to return to work even though her physician had extended her return to work date.

The third, and for purposes of this analysis final, Opinion set forth in the Rosenberg Report reinforces the meme of preexisting and continuing mental illness as follows:

> Plaintiff has qualified as disabled from a psychiatric perspective with regards to her ability to work at Kaplan, as a result of mental health factors unrelated to this case, from at least early 2013, through her termination, and continuing into the foreseeable future. To further clarify, from the time of her termination, she has been disabled from a psychiatric standpoint, has not been capable of returning to work in any position at Kaplan since then, and will not be able to work in any position at Kaplan into the foreseeable future.

Doc.# 36-1 at 29.

As the May 5 Order pointed out, to establish a claim for discrimination under FEHA (or under the Americans with Disabilities Act, the complainant has the burden to show that she was (1) a member of a protected class, (2) that she was qualified for the position she held, (3) that she suffered an adverse employment action, and (4) that some circumstance suggests a discriminatory motive. Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000). The Rosenberg Report is represents Plaintiff's effort to show that Plaintiff was a member of a protected class in light of the court's provisional conclusion that Plaintiff had failed to allege facts to show that she suffered from a disability within the meaning of FEHA. The report is offered to contradict the court's observation that Plaintiff failed to allege she suffers from an articulable mental disorder which presumably could have been diagnosed independently of the symptoms that arose in the context of Honohan's interactions with Plaintiff.

The court finds that Plaintiff's response to the court's May 5 Order raises two issues. The first is whether Plaintiff's evidence giving a diagnostic origin for Plaintiff's disabling symptoms and establishing that the diagnosis both preexisted and caused Plaintiff's depression, anxiety and other symptoms brings her reaction to Honohan's leadership within the protected class of persons with disability.  The second issue is whether the Rosenberg Report serves to otherwise undermine Plaintiff's disability discrimination claims by establishing that Plaintiff was and will remain for the foreseeable future not qualified for the position she held.  The court will consider each in turn.

### A.  *Occult Emotional Illness Does Not Qualify for Protection Under FEHA*

As discussed in the court's May 5 Order, a generalized inability to get along with a supervisor is not sufficient, by itself, to show a disability under FEHA.  See Doc. # 35 at 9 (citing Gliha v. Butte-Glenn Comm. College Dist., 2013 WL 3013660 (E.D. Cal. 2003) at *5 for discussion of cases collected illustrating the proposition).  Thus, according to the weight of state authority as recognized by this court, an employer who does not provide protected leave or otherwise provide accommodation under FMLA in response to an employee's inability to cope with a supervisor's abrasive albeit lawful management style does not violate FEHA.  There is no indication that Defendant (or even Plaintiff) was aware at the time Plaintiff was terminated from employment that Plaintiff's disabling symptoms were a result of a preexisting emotional disorder.  The question therefore becomes whether a defendant can become liable under FEHA when information provided *post hoc* indicates that the employee's inability to cope with the particular manager was the result of a preexisting emotional disorder?  The answer is clearly "no."

> "An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer.  Thus, in order to prove [a discrimination] claim, a plaintiff must prove the

>employer had knowledge of the employee's disability when the adverse employment decision was made. [Citations.] While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts.

Scotch v. Art Inst. Of California – Orange County, Inc., 173 Cal.App.4th 986, 1008 (4th Dist. 2009) (quoting Brundage v. Hahn, 57 Cal.App.4th 228, 236-237 (1997)).

Plaintiff's complaint and all of the documents referenced therein pertain to the problems Plaintiff had in working under the supervision of Honohan. There is no hint of any preexisting diagnosis nor of any impairment of performance during the years of Plaintiff's employment prior to Honohan's arrival. Similarly, there is no hint that the anxiety and depression Plaintiff suffered were anything other than a reaction to Honohan's managerial style. Assuming for the sake of this discussion that the diagnosis of Borderline Personality Disorder can be considered a disability for purposes of FMLA, Defendant had no basis whatsoever to infer that Plaintiff carried that diagnosis at any time prior to Plaintiff's receipt of the Rosenberg Report, which was not available until long after all of the acts complained of had transpired. Because it is not possible to impute the knowledge of Plaintiff's Borderline Personality Disorder to Defendants prior to the time the alleged adverse employment action or actions were taken, it cannot be alleged that the adverse employment actions are evidence of discrimination against persons with Borderline Personality Disorder.

The court finds that late-produced evidence that Plaintiff suffers from a preexisting mental or emotional disorder that may have been triggered, but not caused, by Plaintiff's interactions with Honohan does not change the court's previously-expressed conclusion that Plaintiff was not known to be a member of a protected class due to disability for FEHA purposes at the time of any adverse employment actions alleged in the complaint. Defendants are therefore entitled to summary judgment as to Plaintiff's remaining claims for discrimination or

failure to accommodate or to engage in the interactive process under FEHA.

### B. Diagnostic Opinions in the Rosenberg Report Undercut Discrimination Claims

The Rosenberg Report paints a rather bleak picture with regard to Plaintiff's ability to perform the tasks of her job irrespective of who happens to be Plaintiff's immediate supervisor. In particular, Dr. Rosenberg's third Opinion expresses his conclusion that Plaintiff "has not been capable of returning to work in any position at Kaplan since then, and will not be able to work in any position at Kaplan into the foreseeable future." While it is difficult to square Dr. Rosenberg's Opinion with the undisputed fact that Plaintiff successfully performed the requirements of her job for several years prior to Honohan's arrival; the Opinion lends considerable weight to Defendant's contention that Plaintiff was never able to demonstrate that she was able to return to work at any time relevant to this action. As the May 5 Order noted, a plaintiff alleging facts to show a prima facie case of discrimination is obliged to allege facts to show that she was, *inter alia*, qualified for the position she held. Guz, 24 Cal.4th at 354. The court observes that Dr. Rosenberg's opinion undercuts any allegation by Plaintiff that she was, or could become qualified for the position she held and bolsters Defendant's contention that Plaintiff was unable to ever provide a firm date for her return to work.

It remains the court's determination that Plaintiff has failed to show cause why summary judgment should not be granted in favor of Defendant as to the remainder of Plaintiff's claims.

THEREFORE, for the reasons discussed, it is hereby ORDERED that Defendant's motion for summary judgment is GRANTED as to all claims alleged in Plaintiff's Complaint. The Clerk of the Court shall CLOSE the CASE.

IT IS SO ORDERED.

Dated:   June 10, 2015                               _____
                                                                            SENIOR  DISTRICT  JUDGE